IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02359-NRN

T.M.R.,

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

Defendant.

---

## OPINION AND ORDER

---

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff T.M.R.[1] was not disabled for purposes of the Social Security Act. AR[2] 36. Plaintiff has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C. § 636(c). Dkt. #9.

## Standard of Review

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,*

---

[1] Pursuant to D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. Dkt. ##8, and 8-1 through 8-14.

500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

In addition to the absence of substantial supporting evidence, "[f]ailure to apply the correct legal standard or to provide [the reviewing court] with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting *Smith v. Heckler*, 707 F.2d 1284, 1285 (11th Cir. 1983)). "There are specific rules of law that must be followed in deciding whether evidence is substantial in these disability cases." *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987). But not every error in evaluating evidence or applying the correct legal standard warrants reversal or remand. "Courts may not reverse and remand for failure to comply with a regulation without first considering whether the error was harmless." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing that the Tenth Circuit has "specifically applied [the principle of harmless error] in social security disability cases" and citing cases). The standard for harmless error requires a finding that, considering the evidence before the ALJ, the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at

1145. Harmless error exists where it is "inconceivable" that a different administrative conclusion would have been reached absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

<u>Background</u>

At the second step of the Commissioner's five-step sequence for making determinations,[3] the ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the cervical and lumbar spine, Achilles tendinitis on the left, and mild degenerative joint disease of the left knee. AR 22. Various additional conditions were deemed non-severe. *Id.* Relevant to this appeal, the ALJ determined that Plaintiff's mental impairments (major depressive disorder and anxiety disorder with features of post-traumatic stress disorder ("PTSD") and agoraphobia) do not cause more than minimal limitation in her ability to perform basic mental work activities and are therefore non-severe. AR 25.

The ALJ determined at step three that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the regulations. AR 26–27. Because the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets the

---

[3] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

severity of the listed impairments, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> light work, as defined in 20 CFR 404.1567(b) and 416.967(b), meaning she can lift and/or carry 20 pounds occasionally, and 10 pounds frequently; can stand and/or walk for about six hours total in an eight hour workday; can sit for more than six hours total in an eight hour workday; and can occasionally stoop, kneel, crouch, crawl and climb.

AR 27.

The ALJ found that Plaintiff can perform her past relevant work as a program director and caseworker. AR 35. Accordingly, Plaintiff was deemed not to have been under a disability from March 21, 2015 through February 22, 2021, the date of the decision. AR 36.

## Analysis

Plaintiff argues that the ALJ failed to properly evaluate the impact of her mental impairments at both steps two and four of the five step sequential evaluation process. She asks that this matter be reversed and remanded for a calculation of benefits because, had her RFC been properly assessed, "there is no reasonable probability" that she would have been denied benefits. *Madron v. Astrue*, 311 F. App'x 170, 182 (10th Cir. 2009). The Court will address each argument in turn.

### I. The Severity of Plaintiff's Mental Impairments

Plaintiff first contends the ALJ erred at step two by determining that her mental impairments are not severe.

At step two the Commissioner determines whether a claimant has any severe physical or mental impairments. *See Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). "To find a 'severe' impairment at step two requires only a threshold showing that

the claimant's impairment has 'more than a minimal effect on [her] ability to do basic work activities.'" *Covington v. Colvin*, 678 F. App'x 660, 664 (10th Cir. 2017) (quoting *Williams*, 844 F.2d at 751). But "the claimant must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). "[I]f the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, irrespective of vocational factors, the impairments do not prevent the claimant from engaging in substantial gainful activity." *Id.* (citing *Williams*, 844 F.2d at 751).

The Commissioner follows a "special technique" to evaluate the severity of mental impairments and their effect on a claimant's ability to work. 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *Wells v. Colvin*, 727 F.3d 1061, 1068 (10th Cir. 2013). First, the ALJ must determine whether a claimant has a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920(a)(b)(1); *Wells*, 727 F.3d at 1068. The ALJ must next rate the degree of the functional limitation resulting from the claimant's medically determinable mental impairments in four broad functional areas: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist or maintain pace; and adapt or manage oneself." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). When rating a claimant's degree of limitation, the ALJ uses a five-point scale: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416.920a(c)(3). A rating of "none" or "mild" generally leads an ALJ to conclude that an impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

In this case, the ALJ found that Plaintiff has no limitation with respect to the first functional area, "understanding, remembering, or applying information," noting that Plaintiff

> reported that she did not need any special reminders to take care of personal needs and grooming. She reported that she did not need to be reminded to go places. She reported that she was able to follow directions well. (Ex. 9E). She reported that she was able to be involved with litigation for her motor vehicle accident. She reported that she cared for her grandson. (Hearing testimony). She reported that she had no problem taking care of personal needs. She reported that she prepared meals daily. She reported that she performed household chores, including laundry. She reported that she drove a vehicle and she was able to go out alone. She reported that she shopped in stores. She reported that she handled money management activities, which included paying bills, counting change, handling a savings account and using a checkbook. (Ex. 9E). The evidence overall supports the claimant has no limitation in this area.

AR 25.

Next, the ALJ found that Plaintiff has a mild limitation in interacting with others. The ALJ reasoned as follows:

> She reported that she lived in a house with family. She reported that she spent time with others, including family and friends. She reported that she went to church on a regular basis. She reported that she shopped in stores and she went grocery shopping on a regular basis. She reported that she did not have any problems getting along with family, friends, neighbors or others. (Ex. 9E). The evidence overall supports the claimant has a mild limitation in this area.

AR 25–26.

The ALJ also found Plaintiff has a mild limitation in "concentrating, persisting, or maintaining pace":

> She reported that she was able to concentrate, attend and persist to perform chores, prepare meals, drive a vehicle and handle money management activities. (Ex. 9E). The undersigned notes that, even minimal operation of a motor vehicle requires substantial attention and concentration, in order to remember, understand and carry out complex functions, and to integrate such complex functions into independent situational awareness and projective judgment every few seconds. It is certainly not a simple and

routine set of functions. The evidence overall supports the claimant has a
mild limitation in this area.

AR 26.

In the final functional area, the ALJ found that Plaintiff has no limitation with
"adapting or managing oneself." The ALJ noted that Plaintiff can take care of her
personal needs and perform household chores, drive, shop, and handle finances. *Id.*

Plaintiff argues that in evaluating the severity of her mental impairments, the ALJ
mischaracterized the record. For instance, contrary to the ALJ's findings, Plaintiff
testified that she did not attend church, she shops with the aid of her daughter, and she
has difficulty concentrating while driving. *See* AR 66–68.

Plaintiff also points out that her treating psychologist, Dr. Dudley Sigler-Black,
opined in a letter date January 9, 2021, that Plaintiff "continues to suffer from significant
and debilitating depression, anxiety and panic attacks (several times per day on
average) which are frequently extremely incapacitating"; "continues to report extreme
feelings of sadness, anhedonia, and lack of motivation"; becomes easily confused; and
"displays a pronounced deterioration in not only her memory but also her response time
to basic commands/instructions." AR 1805. He concluded that Plaintiff "is unable to
obtain and/or maintain any type of gainful employment due to the aforementioned
symptoms and severe emotional issues." *Id.*

Dr. Sigler Black's opinion alone satisfies the de minimis threshold regarding the
severity of Plaintiff's mental health impairments. But at least four other mental health
professionals (two state agency consultants and two consultative examiners) also
opined that Plaintiff had at least a moderate limitation in one or more areas of mental
functioning. *See* AR 105 (Maryann Wharry, PsyD), AR 149–50 (Cathy Word-Allen,

PhD), AR 1168 (Victor Neufeld, PhD), and AR 1326–27 (David Benson, PhD). The ALJ discounted those findings, noting, for instance, that her mental exam findings remained normal, and that Dr. Neufeld and Dr. Benson, the consultative examiners, "relied heavily" on Plaintiff's subjective reports. Nevertheless, the Court has little trouble finding that the ALJ erred at step two in deeming Plaintiff's mental impairments non-severe.

However, even if the ALJ erred by failing to find that Plaintiff's mental health conditions are severe impairments, such error does not necessarily require reversal. It is settled law in the Tenth Circuit that "[o]nce the ALJ finds that the claimant has *any* severe impairment, [she] has satisfied the analysis for purposes of step two. [Her] failure to find that additional alleged impairments are also severe is not in itself cause for reversal." *Hill v. Astrue*, 289 F. App'x 289, 292 (10th Cir. 2008) (unpublished) (emphasis in original) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1256–57 (10th Cir. 2007)). Here, the ALJ did find that Plaintiff had severe impairments, and proceeded on to steps three through five. But Plaintiff argues that the ALJ's RFC determination at step four is erroneous as well. The Court turns next to that issue.

## II. The ALJ's RFC Determination

### a. Treatment of Functional Limitations

In formulating a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including those that are severe and non-severe. *See Wells*, 727 F.3d at 1069 (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)) ("In his RFC assessment, the ALJ must consider the combined effect of all medically determinable impairments, whether severe or not."); *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) ("It is beyond dispute that an ALJ is required to

consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less . . . . Further, the failure to consider all of the impairments is reversible error."). "'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.")). The ALJ need not identify "affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category," and the Court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence. *See Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004).

Plaintiff argues that the ALJ's RFC assessment does not take into consideration the non-severe limitations in her mental functional capacity. The Commissioner points out that while the RFC itself may not contain any limitations as to interacting with others and concentrating, persisting, or maintaining pace, the ALJ's step four analysis specifically addresses Plaintiff's mental impairments, whether she considered them severe or not. This sets it apart from two recent cases from this District that Plaintiff cites, *Holgersen v. Commissioner, Social Security Administration*, No. 20-cv-00668-MSK, 2021 WL 2910655 (D. Colo. July 12, 2021), and *Shanks v. Saul*, No. 1:20-cv-

00314-RBJ, 2021 WL 423437 (D. Colo. Feb. 8, 2021), where the ALJs failed to address at all the claimants' mental impairments when formulating the RFCs.

The problem, however, is that at the hearing, the ALJ posed to the vocational expert ("VE") two hypothetical questions. In the first, the VE was asked whether an individual of Plaintiff's age, education, and work experience, and who can perform work at the light level of exertion, could perform any of Plaintiff's past work. AR 86. The VE said yes, the individual could perform several jobs, including the composite position of program director and caseworker. *Id.* The ALJ then asked if any of those jobs would remain if the individual could only occasionally interact with the public, to which the VE responded, "Just the floral arranger position would remain. The others require significant and at least frequent public interaction." *Id.* As stated above, the ALJ found that Plaintiff is capable of performing work as a program director and caseworker, meaning she relied on the first hypothetical. *See* AR 35 "(In response to the hypothetical question, assuming an individual of the claimant's age, education, work experience, and residual functional capacity, the vocational expert testified that the claimant could perform past work as a program director and composite jobs as a program director and caseworker. . . . [T]he undersigned accepts the vocational expert's testimony . . . ."). But her RFC analysis does not expressly discuss if or how Plaintiff's mild limitation in interacting with others may affect her ability to perform jobs which require "significant and at least frequent public interaction."

This is especially troublesome because, as discussed above, the ALJ's finding that Plaintiff had only a mild limitation in interacting with others was premised, at least in part, on faulty information; specifically, that Plaintiff went to church regularly when she

did not, and that she "went grocery shopping on a regular basis" when Plaintiff testified

she tried to take her daughter with her to shop and that she tried to "get in and get out"

when she went. AR 66. Moreover, the mental RFC assessment used at step four

requires a more detailed assessment than that performed at step two, which the ALJ did

not perform, other than to say that Plaintiff's work at The Painter's Pot, an art studio

apparently owned by Plaintiff's husband, required "contact with the public given her front

desk duties and/or teaching art classes." AR 33. But Plaintiff testified that she did not

teach art classes and her duties were limited to handing out canvases and brushes for

eight hours a week. AR 73. While there is some evidence to dispute this, including a

Work Activity Report that indicates that Plaintiff worked at The Painter's Pot for 20 hours

a week "teaching art," AR 405, 428, the ALJ neglected to explore these discrepancies or

otherwise explain how her mild limitations (as found by the ALJ) might impact her ability

to perform skilled, public-facing work. In short, "[w]ithout an express discussion of how

[Plaintiff]'s limitations due to mental impairments would affect or not affect h[er] ability to

perform the jobs described in the RFC, the Decision is deficient." *Holgersen*, 2021 WL

2910655, at *6.

**b. Treatment of Medical Source Opinions**

In assessing a claimant's RFC, the ALJ also must address medical source

opinions. *See Vigil v. Colvin*, 805 F.3d 1199, 1201-02 (10th Cir. 2015). Under the new

regulations set forth in 20 C.F.R. §§ 404.1520c and 416.920c, the Commissioner is to

consider the persuasiveness of each medical source's opinions using five factors: (1)

supportability; (2) consistency; (3) relationship with the claimant (which encompasses

the length of treatment relationship, frequency of examinations; purpose and extent of

treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). For supportability, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone v. Saul*, 1:20-cv-00261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). Consistency, on the other hand, "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)). The ALJ must explain his approach with respect to these factors when considering a medical opinion, but he is not required to expound on the remaining three unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(2)–(3), 416.920c(b)(2)–(3).

In this case, the ALJ found the opinions of Dr. Wharry and Dr. Word-Allen, the state agency consultants, Dr. Nuefeld and Dr. Benson, the consultative examiners, and Dr. Sigler-Black, Plaintiff's treating provider, unpersuasive.

As to the agency consultants, the ALJ rejected Dr. Wharry's opinion that Plaintiff is moderately limited in her capacity for social interaction and in concentrating, persisting, and maintaining pace, and Dr. Word-Allen's opinion that Plaintiff is mildly limited in adapting and managing for oneself and moderately limited in the other three

areas of mental functioning. The ALJ explained that her finding that Plaintiff suffered no severe mental impairments was supported by the evidence that Plaintiff (1) owned and worked at the Painter's Pot, which was not reported to the doctors; and (2) was prescribed by her primary provider, Dr. DeGurse, the same medication for depression at the same dose for years and consistently appeared stable upon examination.

The first explanation—that Plaintiff performed unreported work at The Painter's Pot that the doctors did not consider—is simply wrong, at least as to Dr. Word-Allen. Dr. Word-Allen explicitly states, "In addition, Claimant has her own art studio when [sic] she is the owner of the business. She teaches art classes 20 hours a week." AR 150. Curiously, Dr. Word-Allen goes on to say, "[e]vidence demonstrates that clmt can interact with others." *Id.* The question of how this squares with her determination that Plaintiff is moderately limited in her ability interact with others would appear to be a reasonable one, but it is question for the ALJ, not the Court, to answer. The ALJ, due to her inaccurate characterization of the evidence, did not do so. This was an error. *See Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (recognizing that while an ALJ is entitled to resolve conflicts in the record, she may not mischaracterize evidence to support her findings).

The ALJ's second rationale for rejecting the agency consultant's mental functioning evaluations—that they were not consistent with Plaintiff's treatment with her primary provider—is evidence of a more significant problem: the ALJ's substitution of her lay opinion for that of medical experts. Judge Krieger addressed this issue in *Holgersen*:

> As the Tenth Circuit has frequently recognized, the potential for this type of error is greater [when] an ALJ must assess mental impairments. In *Winfrey*

13

*v. Chater*, 92 F.3d 1017, 1022-23 (10th Cir. 1996) and *Miranda v. Barnhart*, 205 F. App'x 638, 641 (10th Cir. 2005), the Tenth Circuit reversed denial of SSA benefits when the ALJ rejected or "second guessed" a mental health professional's diagnosis based on his or her interpretation of the medical evidence. This may be due, in part, to the invisibility of mental health impairments as compared to physical impairments that can be seen in diagnostic tests and measurements. It also may be due, in part, to the effect of a mental impairment on the claimant's ability to acknowledge or describe it. In any event, the caselaw in the Circuit counsels careful and thoughtful regard for medical assessment particularly in the area of mental health impairment and limitations.

2021 WL 2910655, at *8.

Here, Dr. DeGurse, Plaintiff's primary provider, who the ALJ admitted treated Plaintiff's depression for years as it fluctuated from better to worse, is not cited for any opinion as to Plaintiff's mental functional capacity. Instead, the ALJ's determination that the doctor's records "are not supportive of a severe mental health impairment" was based on her own interpretation of the medical data. The ALJ then rejected the opinions of Dr. Wharry and Dr. Word-Allen because they were inconsistent with the conclusion she formed. This is impermissible. *See Winfrey,* 92 F.3d at 1022–23; *Shanks*, 2021 WL 423437, at *9 (reversing decision where "[i]n essence, the ALJ swapped out the informed expert opinion of these physicians for her own interpretation of raw medical data related to claimant's mental state").

Furthermore, this error was not harmless given that the Dr. Nuefeld and Dr. Benson, the consultative examiners, also determined that Plaintiff's impairments were more substantial than the ALJ determined. *See Allen*, 357 F.3d at 1145. (holding that an error is harmless where, "based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way"). Dr. Nuefeld found Plaintiff to have moderate difficulties recalling instructions due to

attentional issues and effects of depression and anxiety, and moderate to marked impairment in persistence, pace, flexibility, adaptability, and social interaction, primarily due to effects of anxiety. AR 1166–68. Dr. Benson found Plaintiff to have mild limitations in understanding, remembering, and carrying out simple instructions, moderate limitations in complex instructions, and moderate to marked limitations in interacting with supervisors, peers and the public and responding appropriately to work changes. AR 1323–27.

The ALJ found these opinions unpersuasive in part because they were based on one-time examinations, they relied on Plaintiff's subjective reports, and Plaintiff's other mental status exams were generally normal. But there was no opinion proffered by a medical professional with a more extensive treatment history that contradicts these findings. In fact, they are consistent with the other medical opinions on record.

Moreover, in *Miranda*, the court reversed the decision of an ALJ who "'second-guessed' [a physician's] diagnosis by discounting his assessment primarily because it was based on [claimant's] sometimes inconsistent, subjective statements," explaining

> The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements. [The physician's] opinion indicates he was fully aware of inconsistencies in [claimant's] statements, and he rendered his opinion in light of that knowledge. The ALJ's approach impermissibly put him in the position of judging a medical professional on the assessment of medical data, in this case [claimant's] statements. It is not the ALJ's prerogative to substitute his own judgment for that of [the physician].

205 F. App'x at 641. Here, Dr. Nuefel noted that Plaintiff can manage her daily activities, transportation, medical care, and finances, but still found her to be significantly limited. Dr. Benson likewise found limitations despite Plaintiff being "highly effective in the work she has done and stable in her personal life." The ALJ disagreed but rather than citing an opposing medical opinion, instead "substituted h[er] lay assessment of the evidence

to fashion h[er] own opinion in opposition to that of the mental health experts. This constitutes reversible error." *Holgersen*, 2021 WL 2910655, at *9.

The ALJ also cited Plaintiff's ownership of The Painted Pot to discount Dr. Nuefeld and Dr. Benson's opinions, pointing out that these doctors were unaware of her work history there. Notwithstanding the significant factual dispute as to what work Plaintiff actually did at the studio, if the ALJ believed that these opinions were based on an incomplete set of facts, "she had a duty to further develop the record before rejecting" them. *Shanks*, 2021 WL 423437, at *9; *see also* 20 C.F.R. § 404.1512(b)(1) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application...."); *Sims v. Apfel*, 530 U.S. 103, 111 (2000) ("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."); *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir. 1993) ("The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."). This is particularly true here because Dr. Word-Allen—who *was* aware of Plaintiff's alleged "work activity" at The Painter's Pot—also found Plaintiff to have moderate limitations in interacting with others.

Finally, the ALJ rejected Dr. Sigler-Black's opinion that Plaintiff had generally marked limitations as unsupported by the treatment records or other medical evidence. But again, Dr. Sigler-Black's findings are at least somewhat consistent with and corroborated by those of the other medical professionals whose opinions were

improperly discounted by the ALJ. And, importantly, there is no conflicting opinion on the record.

In sum, the ALJ failed to identify specific and legitimate reasons based on substantial evidence in the record to justify rejecting medical opinions that concerned Plaintiff's mental health condition, and remand is warranted.

**III. Remand**

Plaintiff asks that the case be remanded for a calculation of benefits. But the "[t]he decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *J.B.W. v. Saul*, No. 19-2615-SAC, 2020 WL 4429401 at *3 (D. Kan. July 31, 2020) (unpublished) (citation and internal quotation marks omitted). The Court declines Plaintiff's request. Part of the reason the Court is reversing the decision is because the ALJ may have to develop further the record on Plaintiff's mental impairments through additional medical expert consultations and testimony.

<u>**Conclusion**</u>

The Court finds the ALJ's omission of any mental limitations in the RFC and evaluation of the mental medical source opinions contravenes applicable legal standards and thus, the disability conclusions at step two, three, four and five of the sequential analysis are not supported by substantial evidence. *See Holgersen*, 2021 WL 2910655, at *10. Accordingly, the Commissioner's decision is **REVERSED** and

**REMANDED** for additional proceedings consistent with this opinion.

Dated this 8th day of July, 2022.

BY THE COURT:

_____
N. Reid Neureiter
United States Magistrate Judge